## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA



FILED

SEP 1 0 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|  |  |
|---|---|
| ORA COHEN, individually and as the parent and natural guardian for MEIRAV COHEN, a minor, DANIEL COHEN, a minor, ORLY COHEN, a minor, SHIRA COHEN, a minor, and, ELCHANAN COHEN, a minor; SHALOM COHEN; SHOKAT SADIAN; RONIT MOHABBER, individually and as the representative for the Estate of NERIA MOHABER; ORLY MOHABER; and, JOSEPH MOHABER | |

Plaintiffs,

v.

Case: 1:12-cv-01496
Assigned To : Wilkins, Robert L.
Assign. Date : 9/10/2012
Description: General Civil

THE ISLAMIC REPUBLIC OF IRAN; THE
IRANIAN MINISTRY OF INFORMATION
AND SECURITY; THE IRANIAN
REVOLUTIONARY GUARDS CORPS; THE
SYRIAN ARAB REPUBLIC; AND, SYRIAN
MILITARY INTELLIGENCE

Defendants.

## COMPLAINT

Plaintiffs, Ora Cohen, individually and as parent and natural guardian for Meirav Cohen,

a minor, Daniel Cohen, a minor, Orly Cohen, a minor, Shira Cohen, a minor and Elchanan

Cohen, a minor; Shalom Cohen; Shokat Sadian; Ronit Mohabber, individually and as

representative for the Estate of Neria Mohaber; Orly Mohaber; and Joseph Mohaber, by and

through their undersigned counsel, respectfully bring this action against the Islamic Republic of

Iran; the Iranian Ministry of Information and Security; the Iranian Revolutionary Guards Corps;

the Syrian Arab Republic; and, Syrian Military Intelligence, jointly and/or severally, and allege

as follows:



RECEIVED
Mail Room

SEP 1 0 2012

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

1.     This action is brought by Plaintiffs for serious injury and emotional distress suffered as a result of the August 19, 2003 terrorist attack on a public passenger bus in Jerusalem, Israel.  The bombing was carried out by HAMAS, a terrorist organization in which Defendants provided material support or resources including cover, sanctuary, technical assistance, explosive devices, and training.

## JURISDICTION AND VENUE

2.     Plaintiffs bring this action pursuant to the Anti-Terrorism Amendments to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq, and the laws of the jurisdiction of residence of Plaintiffs.

3.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1330(a), 1331, and 1605A.

4.     Defendants are subject to suit in the courts of the United States pursuant to 28 U.S.C. § 1605A, an exception to the Foreign Sovereign Immunities Act permitting lawsuits against foreign state sponsors of terror, for acts of torture, extrajudicial killings, and other terrorist actions committed by said states and their agents.

5.     Pursuant to 28 U.S.C. § 1605A, jurisdiction is proper where either the injured or deceased or an immediate relative claimant was a United States national at the time of the terrorist attack in question.

6.     Plaintiffs Ora Cohen; Meirav Cohen, a minor; Daniel Cohen, a minor; Orly Cohen, a minor; Shira Cohen, a minor; and Elchanan Cohen, a minor, who were injured in the suicide bombing, were all U.S. nationals living in Jerusalem, Israel at the time of the bombing. All other plaintiffs are immediate relatives of these injured nationals.

7.     Private actions for personal injury and related torts brought by Plaintiffs against

foreign state sponsors of terrorism under 28 U.S.C. § 1605A(c) are uniquely and wholly Federal versions of what are traditionally state-law causes of action. These purely Federal tort actions were signed into law on January 22, 2008. Cf. P.L. 110-181 § 1083 (2008).

8.      Plaintiffs bring their claim within 28 U.S.C. § 1605A(b)(2)'s statute of limitations of "10 years after the date on which the cause of action arose."

9.      Venue in this Court is proper in accordance with the provisions of 28 U.S.C. § 1391(f)(4), which provides in pertinent part that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

## PLAINTIFFS

10.     Plaintiffs, Ora Cohen and Shalom Cohen, were injured in the bombing along with their daughter Meirav (7 years old at the time), son Daniel (6 years), daughter Orly (4 years), daughter Shira (1 year), and son Elchanan (1 month).

11.     Plaintiff, Ora Cohen, is and was a United States national who was physically injured on the bus in the August 19, 2003 bombing and also suffered severe emotional distress from the physical injuries of her husband, Shalom Cohen, and their five children.

12.     Plaintiff, Shalom Cohen, is and was an Israeli citizen who was physically injured on the bus in the August 19, 2003 bombing and suffered severe emotional distress from the physical injuries of his U.S. citizen wife, Ora Cohen, and their five children.

13.     Plaintiff, Meirav Cohen, a minor, is and was a United States national who was physically injured on the bus in the August 19, 2003 bombing and also suffered severe emotional distress from the physical injuries of her four siblings and her parents.

14.     Plaintiff, Daniel Cohen, a minor, is and was a United States national who was physically injured on the bus in the August 19, 2003 bombing and also suffered severe emotional

distress from the physical injuries of his four siblings and his parents.

15.    Plaintiff, Orly Cohen, a minor, is and was a United States national who was physically injured on the bus in the August 19, 2003 bombing and also suffered severe emotional distress from the physical injuries of her four siblings and her parents.

16.    Plaintiff, Shira Cohen, a minor, is and was a United States national who was physically injured on the bus in the August 19, 2003 bombing and also suffered severe emotional distress from the physical injuries of her four siblings and her parents.

17.    Plaintiff, Elchanan Cohen, a minor, is and was a United States national who was physically injured on the bus in the August 19, 2003 bombing.  He also suffered severe emotional distress from the physical injuries of his four siblings and his parents Ora and Shalom.

18.    Plaintiff, Shokat Sadian, is Ora Cohen's mother, who suffered severe emotional distress from Ora's injuries in the bombing.

19.    Plaintiff, Ronit Mohabber[1], is Ora Cohen's sister and suffered severe emotional distress from Ora's injuries in the bombing.   Ronit Mohabber also sues in her capacity as Representative for the Estate of Neria Mohaber[2], Plaintiff Ora Cohen's father, whose solatium claim survives based on the severe emotional distress he suffered from the physical injuries of his daughter.

20.    Plaintiff, Orly Mohaber, is Ora Cohen's sister, who suffered severe emotional distress from Ora's physical injuries in the bombing.

21.    Plaintiff, Joseph Mohaber, is Ora Cohen's brother, who suffered severe emotional distress from Ora's physical injuries in the bombing.

---

[1] The surname, Mohabber, is transliterated into English with two 'b's by Plaintiff, Ronit Mohabber, in contrast to the transliteration, Mohaber, with one 'b' used by Ronit's father and siblings.

[2] At all times relevant hereto, decedent, Neria Mohaber, was a U.S. citizen who died on March 5, 2009, nearly six years after the subject bombing.

## DEFENDANTS

22.     Defendant Islamic Republic of Iran ("Iran") is a foreign state which at all times alleged hereinafter was designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. § 2405 (J)).

23.     Defendant Iranian Ministry of Information and Security ("MOIS") is an agency of Defendant Iran, responsible for providing the military and intelligence services through which Iran trained, supported, and otherwise guided and directed the terrorist organizations responsible for causing Plaintiffs' injuries and trauma as described hereinafter.

24.     Defendant Iranian Revolutionary Guards Corps ("IRGC"), by and through its Quds Force Division ("Quds"), is an agency of Defendant Iran, and like Defendant MOIS, is responsible for providing the military and intelligence services through which Iran trained, supported, and otherwise guided and directed the terrorist organizations.

25.     Defendant Syrian Arab Republic ("Syria") is a foreign state that has been designated and continues to remain designated as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979, 50 U.S.C. App. § 2405, and §620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371). At all times relevant herein, Syria provided and continues to provide material support and resources to HAMAS.

26.     Defendant Syrian Military Intelligence, known in Arabic as Shu'bat al-Mukhabarat al-'Askariyya ("Mukhabarat") is an agency of Defendant Syria, responsible for providing the military and intelligence services through which Syria trained, supported, and otherwise guided and directed the terrorist organizations responsible for causing Plaintiffs' injuries and trauma as described hereinafter.

## HAMAS

27.    Harakat al-Muqawamah al-Islamiyya is Arabic for "The Islamic Resistance Movement" and is known by its acronym of Hamas.  The Hamas organization is based in the West Bank and Gaza Strip areas of Israel.

28.    In 1995, the U.S. government designated Hamas a "Specially Designated Terrorist" entity, at which time its assets subject to U.S. jurisdiction were blocked by Executive Order 12947 and implementing regulations.   The Executive Order prohibits transactions, including financial transactions, with organizations and individuals so designated.   Former HAMAS Political Bureau Chief and current Deputy Chief Mousa Abu Marzook was designated as a Specifically Designated Terrorist on August 29, 1995.

29.    On October 8, 1997, Hamas was designated a Foreign Terrorist Organization by the U. S. Secretary of State pursuant to 8 U.S.C. §1189, by publication in the Federal Register. As of that date it became unlawful to provide material support and resources, including currency or monetary instruments, financial services, personnel, transportation, and other provisions to any component of Hamas.

30.    Hamas achieves its stated goals through both a military and a social wing.  The military wing, called Izz el-Din al-Qassam Brigades, carries out suicide bombings and other attacks within Israel, the West Bank, and Gaza.  These attacks target civilians and have resulted in deaths and injuries to thousands of civilian men, women, and children, including the victim Plaintiffs in this action.  The "social" wing conducts indoctrination, recruitment and funding for the military wing.

## STATEMENT OF FACTS

**Iran's Provision of Material Support and Resources to Hamas**

31.     Relations between Iran and Hamas were formalized in 1988, when Iran accepted a HAMAS diplomatic delegation to Iran and established official relations.

32.     In 1992, Israel deported approximately 400 Hamas operatives from the Gaza Strip to Lebanon.  While in Lebanon, these Hamas operatives were provided with military and terrorist training by Defendant IRGC and by Hezbollah members who were trained and sponsored by Defendant Iran.

33.     Hamas members in Lebanon were trained in ambush techniques, kidnapping, methods of subterfuge, and a broad range of firearms, bombing, and other types of weapons. This training continued until late 1993, when nearly all of the newly-trained Hamas terrorists returned to the West Bank and Gaza.

34.     Iran also trained Hamas operatives at a large military camp near Tehran, Iran called "Al Quds".  In 1994, a group of 19 Hamas members spent three and one-half months in intensive military exercise led by MOIS.

35.     Since in the early 1990s, Iran has given Hamas many millions of dollars over the years to build an operational infrastructure from which to carry out terrorist activities in Israel. In 1996 and 1997 alone, Iran provided Hamas with between $25 million and $50 million dollars.

36.     Iran rewarded Hamas financially after terrorist actions occurring in Israel or against Israeli citizens, particularly for those of a spectacular nature such as suicide bombings. At all times relevant to this action, Iran provided material support and resources to Hamas, including funding, direction, and training.

37.     At all times relevant to this action, MOIS has directed and orchestrated Iran's

intelligence service, operating both within and beyond the borders of Iran. Iran has long funneled through MOIS most of the funding it makes available to support terrorism. MOIS, acting through the scope of its agency, performed acts and caused the performance of acts by Hamas, including death, personal injury, hostage taking, torture, and emotional distress.

**Syria's Provision of Material Support and Resources to Hamas**

38.   Syria has provided continuous training, weapons, safe haven and logistical support to Islamist terrorist organizations, including Hamas. In the 1990s, Hamas depended primarily on Syria for military and financial means as well as for its base of operations. Official State Damascus Radio reported that "Syria has turned its land into a training camp, a safe haven and an arms depot for the Palestinian revolutionaries."

39.   Numerous reports, including those of the U.S. State Department, show that the regimes of both Hafez al Assad, Syria's former President, and Bashar al Assad, Syria's current President and the Commander-in-Chief of the Syrian Armed Forces, have provided continuous political, financial, material and military support to Hamas and enabled Hamas to operate its political and military apparatus from Damascus, Syria.

40.   At all times relevant to this Complaint, President Bashar al Assad has materially supported, aided and abetted and conspired with Hamas by providing material support and resources including funding, safe-haven, training facilities, logistics, security, intelligence, location and assistance in transferring weapons to terrorist organizations directly and indirectly. Under the rule of President Bashar and his Vice President's Farouk Al Sharaa, and Abdul Halim Khaddan, Syria's support for terrorist organizations has increased, especially to Hamas.

41.   Since Bashar al Assad took office in 2000, Hamas has sent recruits to Syria for terrorist training. The recruits received weapons training as well as lessons in intelligence

activities, hostage taking, suicide operations, and the preparation of explosives. Moreover, Syrian officials have themselves urged Hamas to increase the attacks against civilians.

42.    The Bashar al Assad regime has spoken out publicly in defense of "martyrdom operations" and has even influenced state-appointed religious leaders to validate the attacks. In December 2001, one of the most prominent Islamic leaders in Syria, Mahmoud Akkam of Aleppo, issued a fatwa saying that the killing of Israeli civilians was permissible and "even a duty" under Islamic law.

43.    Upon information and belief, the Syrian Military Intelligence acted in conjunction with Hamas in carrying out the terrorist attacks against US and Israeli targets, by providing the necessary intelligence and security for Hamas, in planning and executing terrorist attacks both from Syria and Lebanon.

44.    Countless deadly terrorist attacks committed by Hamas in Israel, the West Bank and the Gaza Strip were orchestrated in Syria. Weapons provided to Hezbollah and Hamas by Iran regularly pass through Syria with the Syrian government's knowledge and acquiescence. From their Syrian safe-haven, Hamas leaders have launched terrorist operations, including the attacks which injured Plaintiffs.

45.    Beginning in 1991, the Hafez al Assad regime in Syria allowed Hamas to establish offices in the Yarmouk Refugee Camp not far from Damascus. By that time, Hamas had already been designated as an illegal and terrorist organization by the government of Israel.

46.    The relationship between Syria and Hamas was strengthened immediately after Israel and the Palestine Liberation Organization (PLO) signed the Joint Declaration of Principals in September 1993, which launched the "peace process." President Hafez al Assad invited

Hamas to join other Syrian-sponsored Palestinian groups in a new Damascus-based anti-peace coalition. In October 1994, the Syrian regime permitted a Hamas delegation to travel to Lebanon to meet Hezbollah Secretary General Hassan Nasrallah.

47.     In or about 1994, Sheikh Izz al-Din Khalil, a senior Commander with Hamas, established operational headquarters for the Hamas military wing in Damascus. Sheikh Khalil, who was among the hundreds of Hamas members deported from Gaza to South Lebanon in 1992, worked closely in conjunction with Syrian military intelligence. Upon the arrival of Imad al Alami, another senior Hamas member, in 1995, Damascus became the center of terrorist functions from strategic planning to command and control.

48.     Since approximately 1996, Syria has granted Hamas unrestricted access to Syrian-occupied Lebanon. Hamas opened an office in Lebanon from which it strengthened its contacts with Hezbollah made contacts with the IRGC and began to recruit in Palestinian refugee camps.

49.     During the mid 1990's, the Syrian regime permitted new Hamas recruits to undergo training at Hezbollah and PFLP-GC camps in the Beqaa Valley of eastern Lebanon, an area controlled by the Syrian military. Iranian and Hezbollah instructors in the camps trained hundreds of Hamas operatives in military tactics, explosives manufacturing, hostage-taking, communications, and intelligence gathering.

50.     In late May 1998, the then Hamas leader, Sheikh Ahmad Yasin, visited several Middle Eastern countries and cities, including Damascus, in order to raise funds and political support for the terrorist organization. Yasin met with top Syrian officials and in a speech proclaimed that Palestine could be retaken only by "resistance" and jihad and that the [suicide] attacks would not stop.

51.     Documents seized by the Israel Defense Force ("IDF") in the West Bank reveal

that Syria funneled direct financial support to operative cells of Hamas for terror attacks, including suicide attacks.

52.     In May 2001, about seven months after the beginning of the Second Intifada, the Syrian government initiated the establishment of the Popular Arab Syrian Committee for Supporting the Intifada and Resisting the Zionist Plan (the "Syrian Intifada Committee"). President Bashar al Assad personally authorized the formation of this committee and appointed as its Chairman Ahmad Abdul Karim, a writer, intellectual, and retired colonel in the Syrian armed forces who served in many ministerial and diplomatic positions during the 1960's and 1970's.

53.     The Syrian Intifada Committee's objective was to collect donations for the support of the Intifada. Since its establishment the Committee has collected at least $20 million through its branches and sub-committees located throughout the Syrian provinces. Approximately $14 million of which was collected within the first year of the Committee's activity.

54.     The Palestinian press has also covered the Committee's activity.  Al Hayat reported, on October 6, 2001, that The Syrian Intifada Committee had announced its plan to transfer 170 million Syrian Pounds (U.S. $3.4 million) as the first round of payments to families of martyrs ("shohada") and prisoners and to other beneficiaries in the Palestinian territories.

55.     According to a report taken from Tishreen, another Syrian daily newspaper, at the opening-event of a subcommittee of the Syrian Intifada Committee in Latakia, Syria, the participants, including leaders of the ruling Ba'ath party and the managers of the Syrian Intifada Committee, spoke in favor of martyrdom, suicide attacks and Jihad against Israel.

56.     Following the violent power-grab and establishment of Hamas in the Gaza Strip,

the Syrian Intifada Committee maintained close relations with Hamas leaders. A large part of the Committee's aid was sent to Gaza and its members held meetings with senior Hamas leaders such as Mahmud Al Zahar. During that time, the Committee's activity was perceived in the Arab world, as "A Syrian campaign to support Hamas financially."

57.    The significant support provided by the Bashar al Assad regime to Hamas continues to this day. On February 28, 2009, Musa Abu Marzouk, the Vice-Chairman of Hamas' political bureau stated that "Syria is a friend of Hamas and a friend of the Palestinian People. We have a presence in Syria and we receive all the support, easing [of restrictions and regulations] and the welcome."

58.    The U.S. State Department reports note that Hamas and other Palestinian terrorist organizations operating out of their headquarters in Damascus publicly claim responsibility for deadly terrorist attacks committed by members in Israel, the West Bank and Gaza.

59.    Weapons provided by Iran to Hezbollah regularly pass through Syria with the knowledge, encouragement and aid of the Syrian Military Intelligence, Syrian Armed Forces and the Ministry of Defense, who although responsible for protecting the borders and passport control continuously allowed weapons to reach their destination. These same weapons were used against Israeli and American citizens and visitors to Israel almost every day during the Intifada.

60.    According to an October 31, 2001 intelligence report written by the Head of the Preventive Security Apparatus (PSA) - Jibril Rajoub and addressed to the Chairman of the PA, Yasser Arafat, intensive meetings between the Hamas, PIJ and Hezbollah activists were taking place in Damascus - "in order to increase the joint activity inside [i.e. Israel and the PA Territories] with the aid of Iranian money." (Also referred to in par. 188)

61.    Defendants, directly and indirectly through their agents and instrumentalities

aided and abetted and conspired with Hamas, PIJ and AAMB by providing such terrorist entities with the financial support, training, weapons, safe haven, incitement which were instrumental in achieving the physical and mental anguish committed against Plaintiffs from 2001 through 2006.

62.     The Defendants, directly and indirectly through their agents and instrumentalities, provided material support via financing, training, weapons, safe haven, encouragement, incitement to Hamas, PIJ and the AAMB and affiliated terrorist organizations (such as Hezbollah) who operated jointly with Hamas, PIJ and the AAMB in directing terror attacks against Israeli civilians.  The defendants knew or should have known that this support would be used to fund and incite jihad and terrorism against Jews, Israelis and others in Israel.

63.     By providing myriad avenues along which to support terrorist activities, Iran and Syria confirmed their relationship with Hamas, PIJ and the AAMB.  By employing Supreme Leader Ayatollah Ali Khamenei, President Ahmedinejad and the IRGC to collaborate, design and execute acts of terror with Hamas, PIJ and the AAMB, Iran and Syria have solidified that theses entities and individuals are agents and instrumentalities of Iran and Syria.  As such, Defendants are directly and jointly and severably liable for the injuries suffered by Plaintiffs and should, therefore, be held accountable.

**Seven Family Members Physically Injured in the Bombing**

64.     On August 19, 2003, Plaintiffs Ora and Shalom Cohen boarded the Number 2 Egged bus in Jerusalem, Israel with their minor children Meirav Cohen (then 7 years old), Daniel Cohen (6 years), Orly Cohen (4 years), Shira Cohen (1 year), and Elchanan Cohen (1 month.)

65.     The Number 2 Egged bus was an articulated double-decker with front and rear sections connected by a middle chamber with a rotating circular floor.  Each section of the bus had a stairwell leading to the upper deck.

66.     Plaintiff Shalom Cohen stood on the rotating floor of the middle chamber holding his daughter Shira in his arms.  The other members of the Cohen family were located in the rear of the bus.

67.     As the bus entered the Shmuel Ha-Navi neighborhood in Jerusalem, a Hamas suicide terrorist entered the bus through the rear entrance and detonated the bomb strapped to his body.

68.     The explosion killed 23 people, and wounded over 130 in and around the bus, including each of the seven members of the Cohen family, the plaintiffs herein who were aboard.

69.     The explosion broke Plaintiff, Ora Cohen's, nose and jaw, severely burnt her hair and skin, and burst her eardrums, leaving her largely deaf.  Her 1-month-old son Elchanan was blasted out of her hands.  Ora did not know whether any of her family survived the bombing until several days later.

70.     Plaintiffs, Shalom Cohen and Shira Cohen, suffered severe lacerations and bruises to the body, face, and eyes from flying shards of window glass.

71.     Plaintiff, Meirav Cohen, suffered severe burns and burst eardrums, leaving her largely deaf.

72.     Plaintiffs, Orly Cohen and Daniel Cohen, suffered physical shock from the pressure wave of the bombing.

73.     Plaintiff, Elchanan Cohen, torn from his mother Ora's arms by the force of the blast, suffered a broken hip and a burst eardrum.  He was displaced from the family and rescuers could not identify his parents for an entire week before the Hadassah Ein Kerem Hospital reunited them.

74.     Each plaintiff in the bombing suffered severe emotional distress due to having

been separated from the family in the maelstrom and aftermath, not knowing whether any others had survived. They were not reunited until several days later; as a result each continues to suffer emotional injury to this day.

75.     Shortly after the bombing, Hamas claimed responsibility for the attack.

76.     Plaintiffs' injuries were caused by a willful and deliberate act of Hamas, acting under sponsorship and direction, and with material support and resources of Defendants. Accordingly, Defendants are jointly and severally liable to Plaintiffs for their injuries under vicarious liability.

## COUNT I - BATTERY
## ORA COHEN V. ALL DEFENDANTS

77.     Plaintiff, Ora Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

78.     At all times relevant hereto, Plaintiff, Ora Cohen, was a U.S. national.

79.     On and before August 19, 2003, the Hamas organization provided material support and resources for a member of Hamas to commit extrajudicial killing on the Number 2 Egged bus in Jerusalem, Israel, willfully battering and injuring Plaintiff, Ora Cohen, on the bus with intent to kill.

80.     The bombing inflicted severe and permanent injuries with great pain and suffering, requiring extensive and continuing medical treatment and expenses including hospitals, physician's services, nursing care, and rehabilitation treatment, and diminishing Plaintiff's earning capacity.

81.     The willful, wrongful, and intentional acts of Hamas were funded and directed by Defendants, Islamic Republic of Iran, Iranian Ministry of Information and Security, Iranian Revolutionary Guards Corps, Syrian Arab Republic and Mukhabarat.

WHEREFORE, Plaintiff, Ora Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for battery in the amount of $10,000,000.00 plus costs.

## COUNT II - BATTERY
## MEIRAV COHEN V. ALL DEFENDANTS

82.    Plaintiff, Meirav Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

83.    At all times relevant hereto, Plaintiff, Meirav Cohen, was a U.S. national.

84.    On and before August 19, 2003, the Hamas organization provided material support and resources for a member of Hamas to commit extrajudicial killing on the Number 2 Egged bus in Jerusalem, Israel, willfully battering and injuring Plaintiff, Meirav Cohen, on the bus with intent to kill.

85.    The bombing inflicted severe and permanent injuries with great pain and suffering, requiring extensive and continuing medical treatment and expenses including hospitals, physician's services, nursing care, and rehabilitation treatment, and diminishing Plaintiff's earning capacity.

86.    The willful, wrongful, and intentional acts of Hamas were funded and directed by Defendants, Islamic Republic of Iran, Iranian Ministry of Information and Security, Iranian Revolutionary Guards Corps, Syrian Arab Republic and Mukhabarat.

WHEREFORE, Plaintiff, Meirav Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for battery in the amount of $10,000,000.00 plus costs.

## COUNT III - BATTERY
## DANIEL COHEN V. ALL DEFENDANTS

87.     Plaintiff, Daniel Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

88.     At all times relevant hereto, Plaintiff, Daniel Cohen, was a U.S. national.

89.     On and before August 19, 2003, the Hamas organization provided material support and resources for a member of Hamas to commit extrajudicial killing on the Number 2 Egged bus in Jerusalem, Israel, willfully battering and injuring Plaintiff, Daniel Cohen, on the bus with intent to kill.

90.     The bombing inflicted severe and permanent injuries with great pain and suffering, requiring extensive and continuing medical treatment and expenses including hospitals, physician's services, nursing care, and rehabilitation treatment, and diminishing Plaintiff's earning capacity.

91.     The willful, wrongful, and intentional acts of Hamas were funded and directed by Defendants, Islamic Republic of Iran, Iranian Ministry of Information and Security, Iranian Revolutionary Guards Corps, Syrian Arab Republic and Mukhabarat.

WHEREFORE, Plaintiff, Daniel Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for battery in the amount of $10,000,000.00 plus costs.

## COUNT IV - BATTERY
## ORLY COHEN V. ALL DEFENDANTS

92.     Plaintiff, Orly Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

93.     At all times relevant hereto, Plaintiff, Orly Cohen, was a U.S. national.

94.     On and before August 19, 2003, the Hamas organization provided material support and resources for a member of Hamas to commit extrajudicial killing on the Number 2 Egged bus in Jerusalem, Israel, willfully battering and injuring Plaintiff, Orly Cohen, on the bus with intent to kill.

95.     The bombing inflicted severe and permanent injuries with great pain and suffering, requiring extensive and continuing medical treatment and expenses including hospitals, physician's services, nursing care, and rehabilitation treatment, and diminishing Plaintiff's earning capacity.

96.     The willful, wrongful, and intentional acts of Hamas were funded and directed by Defendants, Islamic Republic of Iran, Iranian Ministry of Information and Security, Iranian Revolutionary Guards Corps, Syrian Arab Republic and Mukhabarat.

WHEREFORE, Plaintiff, Orly Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for battery in the amount of $10,000,000.00 plus costs.

## COUNT V - BATTERY
## SHIRA COHEN V. ALL DEFENDANTS

97.     Plaintiff, Shira Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

98.     At all times relevant hereto, Plaintiff, Shira Cohen, was a U.S. national.

99.     On and before August 19, 2003, the Hamas organization provided material support and resources for a member of Hamas to commit extrajudicial killing on the Number 2 Egged bus in Jerusalem, Israel, willfully battering and injuring Plaintiff, Shira Cohen, on the bus with intent to kill.

100.    The bombing inflicted severe and permanent injuries with great pain and

suffering, requiring extensive and continuing medical treatment and expenses including hospitals, physician's services, nursing care, and rehabilitation treatment, and diminishing Plaintiff's earning capacity.

101.    The willful, wrongful, and intentional acts of Hamas were funded and directed by Defendants, Islamic Republic of Iran, Iranian Ministry of Information and Security, Iranian Revolutionary Guards Corps, Syrian Arab Republic and Mukhabarat.

WHEREFORE, Plaintiff, Shira Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for battery in the amount of $10,000,000.00 plus costs.

## COUNT VI - BATTERY
## ELCHANAN COHEN V. ALL DEFENDANTS

102.    Plaintiff, Elchanan Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

103.    At all times relevant hereto, Plaintiff, Elchanan Cohen, was a U.S. national.

104.    On and before August 19, 2003, the Hamas organization provided material support and resources for a member of Hamas to commit extrajudicial killing on the Number 2 Egged bus in Jerusalem, Israel, willfully battering and injuring Plaintiff, Elchanan Cohen, on the bus with intent to kill.

105.    The bombing inflicted severe and permanent injuries with great pain and suffering, requiring extensive and continuing medical treatment and expenses including hospitals, physician's services, nursing care, and rehabilitation treatment, and diminishing Plaintiff's earning capacity.

106.    The willful, wrongful, and intentional acts of Hamas were funded and directed by Defendants, Islamic Republic of Iran, Iranian Ministry of Information and Security, Iranian

Revolutionary Guards Corps, Syrian Arab Republic and Mukhabarat.

WHEREFORE, Plaintiff, Elchanan Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for battery in the amount of $10,000,000.00 plus costs.

## COUNT VII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## ORA COHEN V. ALL DEFENDANTS

107.    Plaintiff, Ora Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

108.    As a direct and proximate result of the willful, wrongful, and intentional acts of HAMAS, whose acts were funded and directed by Defendants, Plaintiff, Ora Cohen, endured extreme mental anguish and pain and suffering, witnessed physical harm to her husband and her five children, and was subjected to intense physical injury, pain, discomfort and inconvenience.

WHEREFORE, Plaintiff, Ora Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for intentional infliction of emotional distress in the amount of $10,000,000.00 plus costs.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## MEIRAV COHEN V. ALL DEFENDANTS

109.    Plaintiff, Meirav Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

110.    As a direct and proximate result of the willful, wrongful, and intentional acts of HAMAS, whose acts were funded and directed by Defendants, Plaintiff, Meirav Cohen, endured extreme mental anguish and pain and suffering, witnessed physical harm to her parents and her four siblings, and was subjected to intense physical injury, pain, discomfort and inconvenience.

WHEREFORE, Plaintiff, Meirav Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for intentional infliction of emotional distress in the amount of $10,000,000.00 plus costs.

## COUNT IX
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### DANIEL COHEN V. ALL DEFENDANTS

111.   Plaintiff, Daniel Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

112.   As a direct and proximate result of the willful, wrongful, and intentional acts of HAMAS, whose acts were funded and directed by Defendants, Plaintiff, Daniel Cohen, endured extreme mental anguish and pain and suffering, witnessed physical harm to his parents and his four siblings, and was subjected to intense physical injury, pain, discomfort and inconvenience.

WHEREFORE, Plaintiff, Daniel Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for intentional infliction of emotional distress in the amount of $10,000,000.00 plus costs.

## COUNT X
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### ORLY COHEN V. ALL DEFENDANTS

113.   Plaintiff, Orly Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

114.   As a direct and proximate result of the willful, wrongful, and intentional acts of HAMAS, whose acts were funded and directed by Defendants, Plaintiff, Orly Cohen, endured extreme mental anguish and pain and suffering, witnessed physical harm to her parents and her four siblings, and was subjected to intense physical injury, pain, discomfort and inconvenience.

WHEREFORE, Plaintiff, Orly Cohen, demands judgment under 28 U.S.C. § 1605A,

against Defendants, jointly and/or severally, for intentional infliction of emotional distress in the amount of $10,000,000.00 plus costs.

## COUNT XI
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## SHIRA COHEN V. ALL DEFENDANTS

115.    Plaintiff, Shira Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

116.    As a direct and proximate result of the willful, wrongful, and intentional acts of HAMAS, whose acts were funded and directed by Defendants, Plaintiff, Shira Cohen, endured extreme mental anguish and pain and suffering, witnessed physical harm to her parents and siblings, and was subjected to intense physical injury, pain, discomfort and inconvenience.

WHEREFORE, Plaintiff, Shira Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for intentional infliction of emotional distress in the amount of $10,000,000.00 plus costs.

## COUNT XII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## ELCHANAN COHEN V. ALL DEFENDANTS

117.    Plaintiff, Elchanan Cohen, repeats and re-alleges each and every allegation set forth above with equal effect as if alleged herein.

118.    As a direct and proximate result of the willful, wrongful, and intentional acts of HAMAS, whose acts were funded and directed by Defendants, Plaintiff, Elchanan Cohen, endured extreme mental anguish and pain and suffering, witnessed physical harm to his parents and siblings, and was subjected to intense physical injury, pain, discomfort and inconvenience.

WHEREFORE, Plaintiff, Elchanan Cohen, demands judgment under 28 U.S.C. § 1605A, against Defendants, jointly and/or severally, for intentional infliction of emotional distress in the

amount of $10,000,000.00 plus costs.

## COUNT XIII - SOLATIUM
## SOLATIUM CLAIMS FOR THE INJUIES TO SHALOM COHEN

119.    Plaintiffs, Ora Cohen, Meirav Cohen, Daniel Cohen, Orly Cohen, Shira Cohen and Elchanan Cohen, Shalom Cohen's wife and five children, repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

120.    These six plaintiffs, all then and now U.S. nationals, suffered extraordinary grief and mental anguish as a direct and proximate result of their immediate family member Shalom's physical injury in Defendants' terrorist bombing.

121.    Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.   Plaintiffs' emotional distress was so severe that no reasonable person could be expected to endure it.

WHEREFORE, each of Shalom's six immediate family members demands joint and several judgment against Defendants for solatium under 28 U.S.C. § 1605A in amounts as follows:    Ora Cohen, $10,000,000.00;    Meirav Cohen, $10,000,000.00;    Daniel Cohen, $10,000,000.00;  Orly Cohen, $10,000,000.00;  Shira Cohen, $10,000,000.00;  Elchanan Cohen, $10,000,000.00;  plus costs for all.

## COUNT XIV
## SOLATIUM CLAIMS FOR THE INJUIES TO ORA COHEN

122.    Plaintiffs, Shalom Cohen, Meirav Cohen, Daniel Cohen, Orly Cohen, Shira Cohen, Elchanan Cohen, Shokat Sadian, Ronit Mohabber, individually and as representative for the Estate of Neria Mohaber, Orly Mohaber and Joseph Mohaber, Ora Cohen's husband, five children, parents and three siblings, repeat and re-allege each and every allegation set forth above

with equal effect as if alleged herein.

123. These eleven plaintiffs, all of whom are immediate family of U.S. national Ora Cohen, suffered extraordinary grief and mental anguish as a direct and proximate result of Ora's physical injury in Defendants' terrorist bombing.

124. Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community. Plaintiffs' emotional distress was so severe that no reasonable person could be expected to endure it.

WHEREFORE, each of Ora's eleven immediate family members demands joint and several judgment against Defendants for solatium under 28 U.S.C. § 1605A in amounts as follows: Shalom Cohen, $10,000,000.00; Meirav Cohen, $10,000,000.00; Daniel Cohen, $10,000,000.00; Orly Cohen, $10,000,000.00; Shira Cohen, $10,000,000.00; Elchanan Cohen, $10,000,000.00; Estate of Neria Mohaber (represented by Ronit), $10,000,000.00; Shokat Sadian $10,000,000.00; Joseph Mohaber $10,000,000.00; Ronit Mohabber $10,000,000.00; and Orly Mohaber $10,000,000.00; plus costs for all.

## COUNT XV - SOLATIUM
## SOLATIUM CLAIMS FOR THE INJUIES TO MEIRAV COHEN

125. Plaintiffs, Ora Cohen, Shalom Cohen, Daniel Cohen, Orly Cohen, Shira Cohen and Elchanan Cohen, Meirav Cohen's parents and four siblings, repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

126. These six plaintiffs, all of whom are immediate family of U.S. national Meirav Cohen, suffered extraordinary grief and mental anguish as a direct and proximate result of Meirav's physical injury in Defendants' terrorist bombing.

127. Defendants' conduct was so extreme and outrageous as to exceed all possible

bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community. Plaintiffs' emotional distress was so severe that no reasonable person could be expected to endure it.

WHEREFORE, each of Meirav's six immediate family members demands joint and several judgment against Defendants for solatium under 28 U.S.C. § 1605A in amounts as follows: Shalom Cohen, $10,000,000.00; Ora Cohen, $10,000,000.00; Daniel Cohen, $10,000,000.00; Orly Cohen, $10,000,000.00; Shira Cohen, $10,000,000.00; Elchanan Cohen, $10,000,000.00; plus costs for all.

**COUNT XVI - SOLATIUM**
**SOLATIUM CLAIMS FOR THE INJUIES TO DANIEL COHEN**

128. Plaintiffs, Ora Cohen, Shalom Cohen, Meirav Cohen, Orly Cohen, Shira Cohen and Elchanan Cohen, Daniel Cohen's parents and four siblings, repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

129. These six plaintiffs, all of whom are immediate family of U.S. national Daniel Cohen, suffered extraordinary grief and mental anguish as a direct and proximate result of Daniel's physical injury in Defendants' terrorist bombing.

130. Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community. Plaintiffs' emotional distress was so severe that no reasonable person could be expected to endure it.

WHEREFORE each of Daniel's six immediate family members demands joint and several judgment against Defendants for solatium under 28 U.S.C. § 1605A in amounts as follows: Shalom Cohen, $10,000,000.00; Ora Cohen, $10,000,000.00; Meirav Cohen, $10,000,000.00; Orly Cohen, $10,000,000.00; Shira Cohen, $10,000,000.00; Elchanan Cohen,

$10,000,000.00;  plus costs for all.

## COUNT XVII - SOLATIUM
## SOLATIUM CLAIMS FOR THE INJUIES TO ORLY COHEN

131.    Plaintiffs, Ora Cohen, Shalom Cohen, Meirav Cohen, Daniel Cohen, Shira Cohen and Elchanan Cohen, Orly Cohen's parents and four siblings, repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

132.    These six plaintiffs, all of whom are immediate family of U.S. national Orly Cohen, suffered extraordinary grief and mental anguish as a direct and proximate result of Orly's physical injury in Defendants' terrorist bombing.

133.    Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.  Plaintiffs' emotional distress was so severe that no reasonable person could be expected to endure it.

WHEREFORE, each of Orly's six immediate family members demands joint and several judgment against Defendants for solatium under 28 U.S.C. § 1605A in amounts as follows: Shalom Cohen, $10,000,000.00;  Ora Cohen, $10,000,000.00;  Meirav Cohen, $10,000,000.00; Daniel Cohen, $10,000,000.00; Shira Cohen, $10,000,000.00;  Elchanan Cohen, $10,000,000.00; plus costs for all.

## COUNT XVIII - SOLATIUM
## SOLATIUM CLAIMS FOR THE INJUIES TO SHIRA COHEN

134.    Plaintiffs, Ora Cohen, Shalom Cohen, Meirav Cohen, Daniel Cohen, Orly Cohen and Elchanan Cohen, Shira Cohen's parents and four siblings, repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

135.    These six plaintiffs, all of whom are immediate family of U.S. national Shira

Cohen, suffered extraordinary grief and mental anguish as a direct and proximate result of Shira's physical injury in Defendants' terrorist bombing.

136.   Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.   Plaintiffs' emotional distress was so severe that no reasonable person could be expected to endure it.

WHEREFORE, each of Shira's six immediate family members demands joint and several judgment against Defendants for solatium under 28 U.S.C. § 1605A in amounts as follows: Shalom Cohen, $10,000,000.00;  Ora Cohen, $10,000,000.00;  Meirav Cohen, $10,000,000.00; Daniel Cohen, $10,000,000.00;  Orly Cohen, $10,000,000.00;  Elchanan Cohen, $10,000,000.00; plus costs for all.

## COUNT XIX - SOLATIUM
## SOLATIUM CLAIMS FOR THE INJUIES TO ELCHANAN COHEN

137.   Plaintiffs, Ora Cohen, Shalom Cohen, Meirav Cohen, Daniel Cohen, Orly Cohen and Shira Cohen, Elchanan Cohen's parents and four siblings, repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

138.   These six plaintiffs, all of whom are immediate family of U.S. national Elchanan Cohen, suffered extraordinary grief and mental anguish as a direct and proximate result of Elchanan's physical injury in Defendants' terrorist bombing.

139.   Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.   Plaintiffs' emotional distress was so severe that no reasonable person could be expected to endure it.

WHEREFORE, each of Elchanan's six immediate family members demands joint and

several judgment against Defendants for solatium under 28 U.S.C. § 1605A in amounts as follows:   Shalom Cohen, $10,000,000.00;   Ora Cohen, $10,000,000.00;   Meirav Cohen, $10,000,000.00;   Daniel Cohen, $10,000,000.00;   Orly Cohen, $10,000,000.00;   Shira Cohen, $10,000,000.00;   plus costs for all.

**COUNT XX**
**PUNITIVE DAMAGES**

140.    Plaintiffs, Ora Cohen, Shalom Cohen, Meirav Cohen, Daniel Cohen, Orly Cohen, Shira Cohen, Elchanan Cohen, Shokat Sadian, Orly Mohaber, Ronit Mohabber, individually and as representative of the Estate of Neria Mohaber; and Joseph Mohaber, repeat and re-allege each and every allegation set forth above with equal effect as if alleged herein.

141.    The actions of Defendants, intentionally carried out through their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations.

142.    Defendants intended serious injuries to result from their actions.

143.    Plaintiffs were civilians and were not engaged in war or in police duties.

144.    The actions of those who carried out the attack were within the scope of their agency on behalf of the Defendants.

145.    Plaintiffs are entitled to punitive damages in accordance with the provisions of 28 U.S.C. § 1605A(c).

WHEREFORE, each of the eleven plaintiffs demands judgment, jointly and/or severally, for punitive damages against each Defendant in the amount of $500,000,000.00 for each cause of action, plus costs.

## DAMAGES MULTIPLIER FOR SIMULTANEOUS DEVASTATION OF A FAMILY

146.    Each of the seven injured Plaintiffs, Ora Cohen, Shalom Cohen, Meirav Cohen, Daniel Cohen, Orly Cohen, Shiva Cohen and Elchanan Cohen, also prays for a 150% multiplier on their total solatium damages in view of suffering total family devastation which was concurrent and compounded considering their own physical injuries.

Respectfully submitted,

Michael J. Miller, Esq.
D.C. Bar No. 397689
THE MILLER FIRM LLC
108 Railroad Avenue
Orange, VA  22960
Tel: 540-672-4224

Allen L. Rothenberg, Esq.
D.C. Bar No. 328088
THE LAW FIRM OF ALLEN L. ROTHENBERG
1420 Walnut Street
Philadelphia, PA  19102
Tel:  800-624-8888

*Attorneys for Plaintiffs*