UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ORA COHEN, <u>et al.</u>,**<br><br>                Plaintiffs,<br><br>        v.<br><br>**ISLAMIC REPUBLIC OF IRAN, <u>et al.</u>,**<br><br>                Defendants. | Case No. 12-cv-01496 (CRC) |

## <u>MEMORANDUM OPINION</u>

Almost fourteen years ago, a Hamas operative boarded a bus travelling through Jerusalem and detonated a bomb strapped to his body. Ora Cohen, her then-husband Shalom, and their five children—Meirav, Shira, Daniel, Orly and Elchanan—were passengers on the bus and all were injured in the blast. The Cohen family, along with Ora's parents and two sisters, brought an action against the Islamic Republic of Iran ("Iran") and two of its instrumentalities, the Iranian Revolutionary Guard Corps and the Iranian Ministry of Information and Security, under the state-sponsor-of-terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A(1)(a). The Court entered a default judgment against Defendants earlier this year, finding Iran to be liable for the Cohen's injuries based on its documented funding and support of Hamas's terrorist activities. March 16, 2017 Order, ECF No. 43. In the same Order, the Court appointed Deborah Greenspan as a Special Master and requested that she prepare "a report presenting her factual findings and recommendations on the appropriate amount of damages to be awarded to each plaintiff." <u>Id.</u> Relying on depositions, medical records, and other documentary evidence presented by Plaintiffs, Special Master Greenspan has produced a comprehensive report detailing the facts relevant to the damages award and analyzing those facts under the legal framework established in prior state-sponsor-of-terrorism cases. <u>See</u>

Report and Recommendation of Special Master ("R. & R.") at 27, ECF No. 44. After reviewing Ms. Greenspan's well-substantiated report, the Court adopts its factual findings and recommendations, and resolves a handful of open questions that it addresses below. Having examined all aspects of the damages calculation, the Court will award Plaintiffs a total judgment of $208,950,000.

**I.    Damages[1]**

"[T]hose who survived an attack may recover damages for their pain and suffering[;] . . . family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." Wultz v. Islamic Republic of Iran, 864 F. Supp. 2d 24, 37 (D.D.C. 2012) (citing Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 82–83 (D.D.C. 2010)). To establish damages, Plaintiffs "must prove the amount of the damages by a reasonable estimate consistent with this Circuit's application of the American rule on damages." Wultz, 864 F. Supp. 2d at 37 (internal quotation marks and citation omitted). "In determining the reasonable estimate, courts may look to expert testimony and prior awards for comparable injury." Braun v. Islamic Republic of Iran, 2017 WL 79937, at *9 (D.D.C. Jan. 9, 2017) (internal citations omitted).

    A.    Compensatory Damages

        *1. Pain and Suffering*

At the outset, the Court acknowledges that assessing awards for pain and suffering is an imperfect science as no amount of money can properly compensate a victim for the suffering he

---

[1] The Court discussed the factual background of this case at length in its opinion awarding Plaintiffs a default judgment against Defendants. See Cohen v. Islamic Republic of Iran, 2017 WL 818208, at *1–3 (D.D.C. Mar. 1, 2017). It incorporates those facts by reference here, and will reproduce only the facts pertinent to the question of damages.

or she endures during and after an attack. In the interest of fairness, however, courts strive to maintain consistency of awards as between the specific plaintiffs and among plaintiffs in comparable situations. With that goal in mind, the District Court for the District of Columbia has "adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory damages." Wultz, 864 F. Supp. 2d at 37–38 (citing Peterson v. Islamic Republic of Iran, 515 F. Supp. 2d 25, 54 (D.D.C. 2007), abrogated on other grounds by Mohammadi v. Islamic Republic of Iran, 782 F.3d 9, 15 (D.C. Cir. 2015)). That baseline amount is then adjusted based on the nature of the injury, the pain associated with it, the duration of the hospitalization, and the degree and length of impairment. See Peterson, 515 F. Supp. 2d at 52 n.26. A downward deviation to $2–3 million, for instance, is appropriate "where victims suffered only minor shrapnel injuries or minor injury from small-arms fire." Wultz, 864 F. Supp. 2d at 38. A more permanent injury or impairment, by contrast, might warrant a larger award of $7–12 million. Id. The Cohens have offered deposition testimony and medical records in support of their damage claims, which courts may rely upon when determining their awards. See Bluth v. Islamic Republic of Iran, 203 F. Supp. 3d 1, 23 (D.D.C. 2016).

  Applying this framework, Special Master Greenspan reviewed Ora Cohen and her five children's claims for pain and suffering, analyzed the evidence they submitted, and compared their physical injuries and emotional distress to those suffered by plaintiffs in other cases. Finding that her analysis is justified by the supporting documentation and fits squarely within prior case law, the Court accepts her recommendations on pain and suffering and will briefly discuss the individual determinations.

It is indisputable that Ora Cohen has been the lifeblood of the Cohen family for the past thirteen years: she has shuttled her five children to appointments with doctors and therapists, has sat with them in hospitals, and has cared for them as they recovered from successive rounds of surgeries. She has labored almost singlehandedly, consistently placing her own recovery behind that of her children. In the bus bombing, she "suffered a broken nose, and injury to her neck, and significant damage to her eardrum." R. & R. at 27. In its immediate aftermath, she spent hours waiting for news of her family, including whether they had survived the attack. And in the year following, she was diagnosed with PTSD and depression. Id. Her physical injuries, while significant, are not as severe as that of other FSIA plaintiffs, but the extent of her emotional injury is unique and "the fact that she deferred her own treatment to assure proper care for her children warrants the 'baseline' award of $5 million." Id. at 28.

The Cohen's daughter Meirav is likewise entitled to the baseline award of $5 million because injuries to her ears, which are frequently infected, continue to impact her daily life. She was hospitalized for nine days after the attack and still bears daily reminders of it in the form of scars on her face, legs, and arms. See id. at 30–31. Meirav's sister Shira suffered the most severe and permanent physical injuries within the family. Her eye was badly injured in the attack, resulting in permanent disfigurement and loss of vision. The psychological impact of such an injury on a young girl, the ongoing need for treatment, and the permanence of the impairment warrant an upward deviation of $2 million for a total award of $7 million. See Bluth, 203 F. Supp. 3d at 24 (awarding $6 million for a severe flesh wound, emotional distress, and permanent hearing loss).

As to the remaining Cohen children, the Court will award $3 million in pain and suffering to both Orly and Daniel, and $750,000 to Elchanan. Orly suffered shrapnel wounds in the attack,

4

and while she still suffers from some hearing loss, her physical injuries are less severe than her sisters, mother, and prior plaintiffs, warranting a downward departure. See Wamai v. Republic of Sudan, 60 F. Supp. 3d 84, 92 (D.D.C. 2014) (awarding $2.5 million for plaintiffs who suffered broken bones, head trauma, and some hearing impairment). Daniel, like Orly, suffered from shrapnel wounds and has ongoing issues with his hearing, such as ringing in his ears, and is similarly entitled to a $3 million pain and suffering award. Finally, Elchanan, who was a few months old at the time of the attack, has no present memories of it apart from what he has been told by his family. But he has suffered nonetheless: his hip was broken by the blast and he spent hours buried under bodies waiting to be rescued. See R. & R. 32. His lack of memory does not preclude him from recovering for the pain and suffering he endured. See Braun, 2017 WL 79937, at *8 (awarding damages to parents of an infant who was injured in a terrorist attack and died as a result of her injuries).

    2. *Solatium*

In its default judgment opinion, the Court found that Defendants were liable to Ora Cohen, Shalom Cohen, their children, and Ora's immediate family in the United States on their solatium claims. See Cohen, 2017 WL 818208, at *7–8. Each Plaintiff here brings multiple solatium claims, seeking to recover "additive" damages for every Cohen family member injured in the attack, for an award totaling $60 million. The Court reserved judgment, however, "on the number of solatium claims that can be sustained by a family member who witnesses every other member of her family experience an injury" and awaited the special master's report before ruling definitively on the issue. Cohen, 2017 WL 818208, n.8. While the report acknowledges the unique circumstances of having a whole family injured in an attack, it ultimately rejects the "additive" damages approach because it results in awards far higher than individual awards for

pain and suffering and is inconsistent with solatium damages in other cases.  See R. & R. 34–35 (citing Wamai, 60 F. Supp. 3d at 91).  Instead, Special Master Greenspan recommends an "enhancement" approach, where the Court starts with a baseline amount and then enhances it by a specific percentage for additional family members injured in the attack.  See Wultz, 864 F. Supp. 2d at 39–40.  The baseline amount would be determined by the victim with whom the Plaintiff has the closest relationship, i.e. the largest individual solatium award, and would follow the framework set forth in prior cases:

> For relatives of victims physically injured by terrorist attacks, . . . awards are valued at half of the awards to family members of the deceased—$4 million, $2.5 million and $1.25 million to spouses, parents, and siblings, respectively, and $1.5 million for children.  Courts similarly have held that relatives of surviving victims presenting with emotional trauma and no physical injury receive amounts proportionally less than those with physical injuries, namely, $1 million for spouses; $850,000 for parents; $750,000 for children, and $500,000 for siblings.

Kaplan v. Hezbollah, 213 F. Supp. 3d 27, 38 (D.D.C. 2016) (internal citations omitted).  The Court agrees with the suggested approach and finds that it adequately compensates Plaintiffs for the mental anguish suffered for their loved ones' injuries without resulting in exorbitant awards.

Applying that approach, Ora and Shalom Cohen are each entitled to $7,950,000 in solatium damages.  To start, each of them suffered from having a spouse injured in the attack, which warrants $4 million as a baseline amount.  That figure is then enhanced by 20%, or $800,000 each, for Meirav, Shira, Daniel, and Orly's injuries.  An additional $750,000 is added to that sum for Elchanan's injury.  Solatium damages that can be recovered on behalf of Elchanan are capped at $750,000 so that they do not exceed the amount of damages he receives for pain and suffering.  See R. & R. 35–36, 39 (citing Wultz, 864 F. Sup. 2d at 39–40).  The Cohen children will each be awarded $4,500,000 in solatium damages—a baseline amount of $2.5 million for the injuries to their mother enhanced by 40% ($1 million) for injuries to their

father and another 40% ($1 million) for the injuries to their four siblings.  These awards are supported by the Special Master's findings, which recount how difficult it was for the Cohen children to not only see their siblings suffer but also witness the disintegration of their family as their father became "detached" from the rest of them.  See id. at 36–39.

As to Ora Cohen's parents and sisters living in the United States, the assessment is more straightforward and consistent with the baseline amounts set forth above.  The Court credits the unrebutted testimony of Ora's sisters—Ronit Mohabber and Orly Mohaber—describing how deeply they were affected by the attack on their sister and nephew and nieces and will grant them the standard $1.25 million award for injuries suffered by a sibling.  See id. at 40.  The Court also relies on the affidavit of Ora's mother, Shokat Sadian, and the corroborating testimony of Ronit and Orly Mohaber to find that Shokat and Neria Mohaber, Ora's father, experienced significant grief and distress upon learning of the attack and injuries to their daughter and grandchildren.  Therefore, it will award Shokat and Neria's estate $2.5 million each in solatium damages.  See id.[2]

---

[2] Plaintiffs also seek prejudgment interest on their compensatory damages award.  This request for relief, however, appears only in their Proposed Findings of Fact and Conclusions of Law, see Pls.' Proposed Findings of Fact and Conclusions of Law Supp. Mot. Default J. 31–32, and not in the initial Complaint.  See generally Compl.  Because "a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c), the Court will consider only the relief requested in the Complaint and will not award prejudgment interest on the compensatory damages award.  See Gill v. Islamic Republic of Iran, 2017 WL 1289938, at *10 (D.D.C. Apr. 6, 2017).  In any event, prejudgment interest is likely not warranted because "nonpecuniary damages, such as solatium damages, . . . are designed to be fully compensatory. . . . Therefore, the [compensatory] damages awarded are complete and prejudgment interest is not necessary to make the plaintiffs whole."  Thuneibat v. Syrian Arab Republic, 167 F. Supp. 3d 22, 55 (D.D.C. 2016) (citing cases that declined to award prejudgment interest).  But see Wamai, 60 F. Supp. 3d at 98 (awarding prejudgment interest to reimburse plaintiffs for the time value of their money).

B.     Punitive Damages

Section 1605A authorizes punitive damages to be assessed against foreign state sponsors of terrorism.  28 U.S.C. §1605A(c).  Punitive damages, unlike compensatory damages, are intended to "punish and deter" defendants for their bad acts.  Valore, 700 F. Supp. 2d at 87.  Courts calculate punitive damages by considering the following four factors:  "(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants."  Wamai, 60 F. Supp. 3d at 96–97 (quoting Oveissi v. Islamic Republic of Iran, 879 F. Supp. 2d 44, 56 (D.D.C. 2012)).

All four factors weigh in favor of awarding punitive damages against Defendants.  As to the first factor, the targeted bombing of a bus full of innocent civilians—resulting in 23 fatalities and over a hundred injured—was a truly heinous and unconscionable act.  And "[t]he defendants' demonstrated policy of encouraging, supporting and directing a campaign of deadly terrorism is evidence of the monstrous character of the bombing that inflicted maximum pain and suffering on innocent people."  Bodoff v. Islamic Republic of Iran, 424 F. Supp. 2d 74, 88–89 (D.D.C. 2006) (awarding punitive damages against Iranian officials and instrumentalities for the 1996 bombing of a bus in Jerusalem).  Secondly, the harm to Plaintiffs was significant:  each family member suffered injuries—some resulting in permanent impairments—and the entire family continues to experience the effects of the bombing.  Third, as courts of this district have held repeatedly, "only a large amount of punitive damages can serve as an effective deterrent against future terrorist acts."  Bodoff, 424 F. Supp. 2d at 88 (citing Campuzano v. Islamic Republic of Iran, 281 F. Supp. 2d 258, 278 (D.D.C. 2003)).  "Fourth, Iran is a sovereign and has

8

substantial wealth." Bluth, 203 F. Supp. 3d 1, 25 (D.D.C. 2016) (citing Weinstein v. Islamic Republic of Iran, 184 F. Supp. 2d 13, 25 (D.D.C. 2002) and Oveissi, 879 F. Supp. 2d at 56).

Courts have taken varying approaches to determining punitive damages, from imposing a fixed amount, see Flanagan v. Islamic Republic of Iran, 87 F. Supp. 3d 93, 122 (D.D.C. 2015); to multiplying the defendant state's annual expenditure on terrorism by a factor of three to five, see id. at 122; to calculating the total award based on a ratio between punitive and compensatory damages, see Gill v. Islamic Republic of Iran, 2017 WL 1289938, at *13 (D.D.C. Apr. 6, 2017). The Court is persuaded by the reasoning in Gill, which found that the annual-expenditure-on-terrorism multiple was more appropriate for "exceptionally deadly attacks, such as the 1983 bombing of the Marine barracks in Beirut, which killed 241 American military servicemen." Id. Additionally, determining Iran's annual expenditures is imprecise because there is a lack of credible evidence supporting the numerical estimates and when the funding occurred. It is a rough approximation at best. An outsized punitive damage award is also less justified when the perpetrator funded the terrorist activities rather than carried them out himself. See Bluth, 203 F. Supp. 3d at 26. Therefore, "[g]iven the frequency of these attacks and the lack of any evidence that high awards have successfully deterred them, the Court finds that neither the large sum of $500 million requested by Plaintiffs nor the sum resulting from the expenditure-times-multiplier method is appropriate." Id.

It is more fitting here to anchor punitive damages to compensatory damages by multiplying the total award of compensatory damages by a factor between one and five—a method approved by various courts. See Gill, 2017 WL 1289938, at *13 (using a factor of three because five is reserved for "exceptional cases"); Moradi v. Islamic Republic of Iran, 77 F. Supp. 3d 57, 73 (D.D.C. 2015) (awarding a punitive damage award equal to the total compensatory

damage award); <u>Opati v. Republic of Sudan</u>, 60 F. Supp. 3d 68, 82 (D.D.C. 2014) (same); <u>Harrison v. Republic of Sudan</u>, 882 F. Supp. 2d 23, 50 (D.D.C. 2012) (using a factor of three). The Court concludes that a multiple of two is appropriate here because the "Defendants in this case did not directly carry out the attack, but funded Hamas, [and] it is doubtful whether a large amount . . . would have the deterrent effect that it might have had in times past." <u>Bluth</u>, 203 F. Supp. 3d at 26. Doubling the amount of compensatory damages, $69,650,000, equals a total punitive damages award of $139,300,000, which will be apportioned among the Plaintiffs relative to their individual compensatory awards. See <u>id.</u>

## II.   Conclusion

For the foregoing reasons, the Court will award Plaintiffs the following amounts for their claims:

|  | Pain and Suffering | Solatium | Total Compensatory Damages | Total Punitive Damages | Total Damages |
|---|---|---|---|---|---|
| Ora Cohen | $ 5,000,000 | $ 7,950,000 | $ 12,950,000 | $ 25,900,000 | **$ 38,850,000** |
| Meirav Cohen | $ 5,000,000 | $ 4,500,000 | $ 9,500,000 | $ 19,000,000 | **$ 28,500,000** |
| Shira Cohen | $ 7,000,000 | $ 4,500,000 | $ 11,500,000 | $ 23,000,000 | **$ 34,500,000** |
| Daniel Cohen | $ 3,000,000 | $ 4,500,000 | $ 7,500,000 | $ 15,000,000 | **$ 22,500,000** |
| Orly Cohen | $ 3,000,000 | $ 4,500,000 | $ 7,500,000 | $ 15,000,000 | **$ 22,500,000** |
| Elchanan Cohen | $ 750,000 | $ 4,500,000 | $ 5,250,000 | $ 10,500,000 | **$ 15,750,000** |
| Shalom Cohen | $ - | $ 7,950,000 | $ 7,950,000 | $ 15,900,000 | **$ 23,850,000** |
| Shokat Sadion | $ - | $ 2,500,000 | $ 2,500,000 | $ 5,000,000 | **$ 7,500,000** |
| Neria Mohaber | $ - | $ 2,500,000 | $ 2,500,000 | $ 5,000,000 | **$ 7,500,000** |
| Ronit Mohaber | $ - | $ 1,250,000 | $ 1,250,000 | $ 2,500,000 | **$ 3,750,000** |
| Orly Mohaber | $ - | $ 1,250,000 | $ 1,250,000 | $ 2,500,000 | **$ 3,750,000** |
| **TOTAL** | **$ 23,750,000** | **$ 45,900,000** | **$ 69,650,000** | **$ 139,300,000** | **$ 208,950,000** |

Therefore, the Court will award $208,950,000 in total damages.  A separate Order accompanies this Memorandum Opinion.

                                              _____
                                              CHRISTOPHER R. COOPER
                                              United States District Judge

Date:  __July 27, 2017_____